UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

TYRONE A. BELL,

                            Plaintiff,

v.

HEIDI WASHINGTON, et al.,

                            Defendants.

_____/

Case No. 2:21-cv-12481

HONORABLE STEPHEN J. MURPHY, III

## **OMNIBUS OPINION AND ORDER**

Plaintiff Tyrone A. Bell filed the present pro se 28 U.S.C. § 1983 action against more than thirty Michigan Department of Corrections (MDOC) officials. ECF 1. After Plaintiff amended the complaint, ECF 17, Defendants jointly moved for summary judgment on exhaustion grounds, ECF 39. The parties briefed the motion. ECF 49; 50; 51. Unrelated to summary judgment, Plaintiff filed six consecutive motions or requests about his use of electronic devices, and he also moved for leave to file a supplemental pleading. ECF 69–75. Defendants responded to Plaintiff's requests about electronic devices. ECF 76. For the reasons below, the Court will grant Defendants' motion for summary judgment and deny all of Plaintiff's recent requests and motions.[1]

---

[1] The Court need not hold a hearing because Plaintiff is proceeding pro se and is incarcerated. E.D. Mich. L.R. 7.1(f)(1).

1

## BACKGROUND

The allegations in the amended complaint described events beginning in October 2019 that occurred while Plaintiff was incarcerated at the Chippewa Correctional Facility (URF) and at the Saginaw Correctional Facility (SRF). ECF 17, PgID 232–38. During that time, Plaintiff filed several grievances. ECF 39-3, PgID 473–76. The Court will detail two grievances, the events of which were relevant to the summary judgment motion.

While housed at URF, Plaintiff alleged that he was placed in segregation after being issued an assault and battery "[C]lass I" misconduct violation by Defendant Eicher. ECF 17, PgID 232–33. Plaintiff claimed that "his actions were in self-defense[] [a]nd that he did not speak to []or touch anyone." *Id.* at 233. Thus, Plaintiff said the Class I misconduct violation was "based on assumptions and conclusions," in violation of MDOC's administrative hearing policies. *Id.* at 239, 249. And Plaintiff filed an MDOC grievance about the alleged policy violation. *Id.* at 236 (grievance URF-19-10-2827-27A); ECF 39-3, PgID 476 (same).

After Plaintiff was transferred to SRF, a corrections officer told him to move to a different cell within the facility and that he needed to bring his bedroll to the new cell. ECF 17, PgID 236. When Plaintiff went to retrieve his bedroll, he claimed that he found the bedding "placed in front of [a] water closet" that had "been leaking sewage water." *Id.* Plaintiff requested a new bedroll because the old one had become soiled by the leaking sewage water. *Id.* at 237. But officers provided Plaintiff with

only half a bedroll. *Id.* Plaintiff was denied the other half after Defendant Berry issued Plaintiff a misconduct violation for "destruction or misuse of property." *Id.*

At an infraction hearing, "Defendant Bischer found Plaintiff guilty of the infraction based on Defendant Berry's credibility." *Id.* at 238 (alterations omitted). Plaintiff claimed that he never put his bedroll in front of the water closet and that surveillance footage would support his claim. *Id.* He therefore filed a grievance to appeal the infraction decision on that ground. *Id.* (grievance SRF-2020-07-0450-07A); ECF 39-3, PgID 475 (same). Defendant Pratt reviewed the surveillance footage. ECF 17, PgID 238. But Pratt told Plaintiff that nothing in the footage showed who left the bedroll in front of the water closet. *Id.* Thus, Defendant Pratt could only reduce the charge. *Id.* Plaintiff was ultimately charged with destruction or [m]isuse of property," and $13.56 was taken out of his prisoner trust account to cover the bedroll damage. *Id.*

## LEGAL STANDARD

The Court must grant a summary judgment motion "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A moving party must point to specific portions of the record that "it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the moving party has met its burden, the non-moving party may not simply rest on the pleadings but must present "specific facts showing that there is a genuine issue for

trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (emphasis omitted) (quoting Fed. R. Civ. P. 56(e)).

A fact is material if proof of that fact would establish or refute an essential element of the cause of action or defense. *Kendall v. Hoover Co.*, 751 F.2d 171, 174 (6th Cir. 1984). A dispute over material facts is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). When considering a summary judgment motion, the Court must view the facts and draw all reasonable inferences "in the light most favorable to the non-moving party." *60 Ivy St. Corp. v. Alexander*, 822 F.2d 1432, 1435 (6th Cir. 1987) (citations omitted).

Here, Plaintiff's verified complaint carries "the same force and effect as an affidavit" for summary judgment purposes. *El Bey v. Roop*, 530 F.3d 407, 414 (6th Cir. 2008) (citing *Lavado v. Keohane*, 992 F.2d 601, 605 (6th Cir. 1993)). "[F]or inferences, thoughts, and opinions to be properly included in a Rule 56 affidavit, they must be premised on firsthand observations or personal experience, and established by specific facts." *Giles v. Univ. of Toledo*, 214 F.R.D. 466, 469 (N.D. Ohio 2007) (collecting cases).

## DISCUSSION

The Court will first detail the PLRA's exhaustion requirement. After, the Court will explain the MDOC grievance procedure. The Court will then grant summary judgment to Defendants because Plaintiff either failed to exhaust his administrative remedies or because he asserted non-cognizable claims. Last, the Court will deny

Plaintiff's recent motions and requests about using electronic devices or filing a supplemental pleading.

I.   PLRA Exhaustion

Under the PLRA, a prisoner must exhaust his or her administrative remedies before suing. 42 U.S.C. § 1997e(a); *Woodford v. Ngo*, 548 U.S. 81, 90 (2006). A prisoner need not plead exhaustion in the complaint. *Jones v. Bock*, 549 U.S. 199, 216 (2007). Rather, a prison official must raise failure to exhaust as an affirmative defense. *Id.*

To prove the affirmative defense, the prison official must show "that no reasonable jury" could find that the prisoner exhausted his or her administrative remedies. *Surles v. Andison*, 678 F.3d 452, 455–56 (6th Cir. 2012). A prisoner properly "exhausts his remedies when he complies with the grievance procedures put forward by his correctional institution." *Mattox v. Edelman*, 851 F.3d 583, 590 (6th Cir. 2017) (citing *Jones*, 549 U.S. at 217–19). "[A] prisoner cannot satisfy the PLRA exhaustion requirement by filing an untimely or otherwise procedurally defective administrative grievance." *Scott v. Ambani*, 577 F.3d 642, 647 (6th Cir. 2009) (citing *Woodford*, 548 U.S. at 83). In short, the PLRA "requires proper exhaustion." *Woodford*, 548 U.S. at 83.

But federal courts may address unexhausted claims in two situations. For one, courts may consider unexhausted prisoner claims if a prison official declined to enforce its "own procedural requirements and opt[ed] to consider otherwise-defaulted claims on the merits." *Reed-Bey v. Pramstaller*, 603 F.3d 322, 325 (6th Cir. 2010). For

two, courts may excuse a prisoner's failure to exhaust if the administrative remedies were unavailable to him. *Ross v. Blake*, 136 S. Ct. 1850, 1858–60 (2016).

In practice, the PLRA's exhaustion requirement accomplishes three ends: exhaustion "allow[s] prison officials a fair opportunity to address grievances on the merits, to correct prison errors that can and should be corrected[,] and to create an administrative record for those disputes that eventually end up in court." *Mattox*, 851 F.3d at 591 (quotations omitted). If a prisoner flouts the prison's grievance procedures, courts typically dismiss unexhausted claims and address only the merits of exhausted claims. *Jones*, 549 U.S. at 220–24.

## II.   MDOC Grievance Policy

The primary grievance procedure outlined in MDOC Policy Directive 03.02.130 contains four parts. First, the prisoner must "attempt to resolve the issue with the staff member involved within two business days after becoming aware of a grievable issue." ECF 39-2, PgID 466 ¶ Q.

Second, if the issue is unresolved, the prisoner may file a "Step I grievance" "within five business days after the [prisoner] attempted to resolve the issue with appropriate staff." *Id.* at 466 ¶ Q, 467 ¶ W. The prisoner must include the "[d]ates, times, places, and names of all those involved" in the grievance form. *Id.* at 466 ¶ S. The prisoner must send a completed Step I grievance form "to the Step 1 Grievance Coordinator designated for the facility." *Id.* at 467 ¶ W. Usually, the prison must respond within fifteen business days after receiving it. *Id.* at 468 ¶ Z. "Grievances

and grievance appeals at all steps [are] considered filed on the date received by the [prison's Grievance] Department." *Id.* at 467 ¶ T.

Third, the prisoner may file a Step II grievance form with the prison's Step II Grievance Coordinator if (i) he is dissatisfied with the Step I response, or (ii) he did not receive a timely response. *Id.* at 469 ¶ DD. The prisoner must file a Step II grievance form within ten business days of (i) receipt of the Step I response, or (ii) expiration of the prison's time to respond. *Id.*; *see also id.* at 467 ¶ U (If the prisoner "chooses to pursue a grievance that has not been responded to by staff within required time frames, . . . the [prisoner] may forward the grievance to the next step of the grievance process within ten business days after the response deadline expired."). Put differently, if a prisoner does not receive a Step I response within fifteen days, the prisoner must file a Step II grievance within the next ten days.

Fourth, the prisoner may file a Step III grievance to the prison's Grievance Section if (i) he is dissatisfied with the Step II response, or (ii) he did not receive a timely response. *Id.* at 470 ¶ HH. The prisoner must file a Step III grievance form within ten business days of (i) receipt of the Step II response, or (ii) expiration of the prison's time to respond. *Id.* In the end, "[t]he grievance process is not complete until either the MDOC responds to the Step III appeal or the time for doing so expires." *Moore v. Westcomb*, No. 2:20-cv-179, 2021 WL 1851130, at *2 (W.D. Mich. May 10, 2021).

III.   Plaintiff's Failure to Exhaust

Beginning in 2019, Plaintiff filed five Step III grievance appeals at the Chippewa and Saginaw Correctional Facilities. ECF 39-3, PgID 475–76. The Court will first address whether Plaintiff properly exhausted each grievance. After, the Court will explain why his unexhausted claims did not result from an unavailable administrative procedure.

A.   Grievance URF-19-10-2827-27A

Defendants conceded that Plaintiff properly exhausted the issue set forth in grievance URF-19-10-2827-27A. ECF 39, PgID 457; ECF 39-3, PgID 475 (filed at Step I October 25, 2019). In that grievance, Plaintiff complained that Defendant Eicher "knowingly, intelligently, intentionally[,] and willfully issued him a false Class I misconduct for assault." *Id.* (internal quotation marks omitted); *see* ECF 39-3, PgID 507. Based on MDOC records, the grievance was ultimately rejected at Step I because "issues involving Class I misconducts are non-grievable." ECF 39, PgID 457; ECF 39-3, PgID 475. The rejection was upheld at Steps II and III. ECF 39, PgID 457; ECF 39-3, PgID 475, 504. Still, Plaintiff properly exhausted the grievance. The claim is thus properly before the Court and will be discussed below.

B.   Grievance URF-19-10-2865-27A

In the second grievance, Plaintiff explained that non-party "John Doe #1 Review Sergeant should have dismissed the misconduct ticket against him because the body of the misconduct did not fit the charge." ECF 39, PgID 457 (internal quotation marks omitted); *see* ECF 39-3, PgID 475, 502 (filed at Step I October 29,

8

2019). But the grievance does not relate to any of the named Defendants in the case. Thus, none of Plaintiff's claims are exhausted in grievance URF-19-10-2865-27A.

### C.    Grievance URF-19-11-3064-28E

In the third grievance, Plaintiff explained "that despite requesting a chair or stool from C/O Miller, none was provided." ECF 39, PgID 456; *see* ECF 39-3, PgID 475, 497 (filed at Step I November 26, 2019). According to MDOC policy, Plaintiff needed to file his Step II appeal by December 26, 2019. ECF 39-3, PgID 495. But the Warden's office received the appeal on January 3, 2020, so it was rejected as untimely. *Id.* at 475, 494–96. Because Plaintiff failed to timely exhaust his administrative remedies for the issues raised in grievance URF-19-11-3064-28E, the Court cannot consider them.

### D.    Grievance URF-19-12-3065-28E

In the fourth grievance, Plaintiff explained "that staff did not respond appropriately to his pain complaints" in November 2019. ECF 39, PgID 456; *see* ECF 39-3, PgID 475, 490 (filed at Step I November 26, 2019). According to MDOC policy, Plaintiff needed to file his Step II appeal by December 19, 2019. ECF 39-3, PgID 490. But the Warden's office received the appeal on January 3, 2020, so it was rejected as untimely. *Id.* at 475, 489–90. Because Plaintiff failed to timely exhaust his administrative remedies for the issues raised in grievance URF-19-12-3065-28E, the Court cannot consider them.

### E.   Grievance SRF-20-07-0450-07A

Defendants conceded that Plaintiff properly exhausted the issue set forth in grievance SRF-20-07-0450-07A. ECF 39, PgID 455; ECF 39-3, PgID 476 (filed at Step I July 13, 2020). In that grievance, Plaintiff complained that Defendant Bischer "did not provide him with an impartial hearing regarding whether he properly returned his bedroll to the SRF Quartermaster." ECF 39, PgID 455; *see* ECF 39-3, PgID 482. Based on MDOC records, the grievance was ultimately denied. ECF 39-3, PgID 475. Still, Plaintiff timely exhausted the grievance. *Id*. The claim is properly before the Court and will be discussed below.

### F.   Available Administrative Procedure

Plaintiff exhausted his administrative remedies for two claims, set forth in grievance SRF-20-07-0450-07A and grievance URF-19-10-2827-27A. The claims are against only two Defendants: Prison Counselor James Bischer and Corrections Officer Daniel Eicher. ECF 39, PgID 441–42; ECF 39-3, PgID 482, 507. As to his unexhausted claims, Plaintiff argued that MDOC failed to deliver or process his grievances and thus "imped[ed] . . . [P]laintiff's procedural due process" and "thwart[ed] Plaintiff's ability to exhaust all available administrative remedies." ECF 49, PgID 556.

The PLRA's exhaustion requirement is strictly construed, but the statute includes a "built-in exception to the exhaustion requirement: A prisoner need not exhaust remedies if they are not 'available.'" *Ross v. Blake*, 578 U.S. 632, 635–36 (2016). An administrative procedure is considered "unavailable" in three situations.

10

*Id.* at 643–44. First, when "officers [are] unable or consistently unwilling to provide any relief to aggrieved inmates." *Id.* at 643 (citation omitted). Second, when the "administrative scheme might be so opaque that it becomes, practically speaking, incapable of use" such that "no ordinary prisoner can discern or navigate it." *Id.* at 643–44. And third, "when prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." *Id.* at 644.

Simply put, nothing in Plaintiff's response suggested that he "lacked an available administrative remedy" such that the Court could excuse his failure to exhaust. *Id.* at 636; *see* ECF 49, PgID 556–64. For instance, no facts suggest that MDOC's exhaustion procedures "operate[d] as a simple dead end—with officers unable or consistently unwilling to provide any relief to aggrieved inmates." *Ross*, 578 U.S. at 643; *see* ECF 49, PgID 557–59, 562. Nor is the procedure "so opaque that it [became], practically speaking, incapable of use." *Ross*, 578 U.S. at 643; *see* ECF 49, PgID 557–59, 562. And there is no evidence that MDOC officials thwarted Plaintiff's access to the grievance process or that they had "devised a procedural system in order to trip up all by the most skillful prisoners." *Ross*, 578 U.S. at 644 (cleaned up); *see* ECF 49, PgID 557–59, 562. To the contrary, the evidence shows that MDOC promptly responded to every grievance and appeal that Plaintiff submitted. *See* ECF 39-3, PgID 475–76, 479–83, 489–508.

Plaintiff claimed a corrections officer had threatened him when he told Plaintiff that if he "stop[ped] writing all those grievances maybe they will ride

[Plaintiff] out." ECF 49, PgID 562. Plaintiff took the comment as a "threat" that if he continued to file grievances, "he would remain in segregation." *Id.* But Plaintiff never suggested that the threat then caused him to discontinue with the grievance process. In fact, the evidence supports the opposite conclusion. Plaintiff noted that the "threat" occurred in "late December early January of 2020." ECF 49, PgID 562. MDOC records show that Plaintiff filed five Step III appeals between December 12, 2019 through September 21, 2020. ECF 39-3, PgID 475–76.

Beyond that, Plaintiff claimed he believed "he no longer needed to pursue the grievance process" as to the bedroll issue after a corrections officer told him that "he didn't have to worry about being charged for the lost or damaged [bedroll] property." ECF 49, PgID 562. But even construing that fact in Plaintiff's favor, *60 Ivy St. Corp.*, 822 F.2d at 1435, the officer never suggested that Plaintiff should discontinue the grievance process—only that he didn't think Plaintiff would be charged for the damaged bedroll, *see* ECF 49, PgID 562. The officer, therefore, never "misled" Plaintiff "so as to prevent [his] use of otherwise proper procedures." *Ross*, 578 U.S. at 644. Plus, MDOC conceded that at least one of his grievances about the bedroll *was* fully exhausted. ECF 39, PgID 455.

Plaintiff last filed a declaration to support his assertion that MDOC thwarted his ability to timely exhaust his administrative remedies.[2] ECF 50, PgID 587–89. In the declaration, he broadly stated that MDOC "has a practice, pattern, []or custom of

---

[2] Because Plaintiff never requested leave to file multiple responses, the Court will liberally construe the declaration, ECF 50, PgID 587–90, as an exhibit to his initial response, ECF 49.

12

not processing grievances []or holding legal documents until they are untimely filed." *Id.* at 588. But Plaintiff failed to explain with specificity how MDOC thwarted his ability to exhaust his claims. *See id.* He disclosed no dates, names, or even which grievances he was allegedly blocked from exhausting. *See id.* Plaintiff's declaration therefore does not create a genuine issue of material fact that officials tried to interfere with Plaintiff's "pursuit of relief" such that "the administrative process [became] unavailable" to him. *Ross*, 578 U.S. at 644.

In sum, there is no genuine issue of material fact that Plaintiff failed to exhaust certain claims because he "lacked an available administrative remedy." *Id.* at 636. As a result, the Court will not excuse his failure to exhaust. The Court will thus dismiss the claims against all Defendants except Bischer and Eicher for failure to exhaust.

IV   <u>Exhausted Claims</u>

Two exhausted claims remain against Defendants Eicher and Bischer. The Court will address each claim in turn.

A.   *Claim Against Defendant Eicher*

Plaintiff's first claim, exhausted in grievance URF-19-10-2827-27A, alleged that Defendant Eicher "knowingly, intelligently, intentional[,] and willfully falsified a Class I misconduct . . . for assault [and] battery." ECF 39-3, PgID 507; *see* ECF 17, PgID 239, 247, 249–252. In other words, Plaintiff alleged that Defendant Eicher filed "false disciplinary charges against [him]." *Person v. Campbell*, 182 F.33d 918 (Table), 1999 WL 454819, at *1 (6th Cir. 1999). According to Plaintiff, Defendant Eicher's

conduct violated his right to due process, equal protection, and his right against cruel and unusual punishment. ECF 17, PgID 239, 247, 249.

"A prisoner has no constitutional right to be free from false accusations of misconduct." *Riley v. Church*, 81 F.3d 161 (Table), 1996 WL 145846, at *2 (6th Cir. 1996) (citation omitted). And a "defendant's alleged conduct does not rise to the level of a constitutional violation absent retaliatory intent." *Id.* (citation omitted). Plaintiff contended that Defendant Eicher's actions were intentional, but he never suggested that they were retaliatory. ECF 39-3, PgID 507l; *see* ECF 17, PgID 246–47 (retaliation allegations). The claim therefore fails to raise "a constitutional violation redressable under § 1983," *id.* (citation omitted), and the Court will dismiss it.

### B.    *Claim Against Defendant Bischer*

The final claim, exhausted in grievance SRF-20-07-0450-07A, ECF 39-3, PgID 483, alleged that Defendant Bischer did not conduct an impartial hearing when he "failed to review the requested security surveillance footage." ECF 17, PgID 239. Plaintiff claimed that Defendant Bischer erred in his finding that Plaintiff was responsible for the loss or damage of his State-issued bedroll in violation of his right to due process and equal protection. *See* ECF 17, PgID 237–39, 250 (amended complaint).

"[A] claim for monetary and equitable relief complaining only of procedural defects in a prison disciplinary hearing which, if established, would imply the invalidity of the punishment imposed, is not cognizable under § 1983." *Person*, 1999 WL 454819, at *1 (citing *Edwards v. Balisok*, 520 U.S. 641, 648 (1997)); *see* ECF 17,

PgID 251–52 (monetary damages). Plaintiff ultimately concluded that because of Defendant Bischer's alleged violative actions, "$13.56 was wrongfully taken out of [his] account for the [S]tate's loss." ECF 17, PgID 238. Because Plaintiff's conclusion "necessarily impl[ies] the invalidity of the punishment imposed," his claim is "not cognizable under § 1983." *Person*, 1999 WL 454819, at *1 (citation omitted).

What is more, if Plaintiff's claim is an allegation that Defendant Bischer perpetuated "false disciplinary charges against [him]," *Person*, 1999 WL 454819, at *1, then the claim is not redressable under § 1983 because "[a] prisoner has no constitutional right to be free from false accusations of misconduct." *Riley*, 1996 WL 145846, at *2 (citation omitted). Plaintiff would have had to show that Defendant Bischer's conduct was substantially motivated by "retaliatory intent." *Id.* (citation omitted). Yet Plaintiff lodged no allegation about Defendant Bischer's retaliatory intent. *See* ECF 17, PgID 246–47 (retaliation allegations). He alleged only that Defendant Bischer denied him due process by failing to review surveillance footage. ECF 17, PgID 239. Accordingly, the Court will dismiss the remaining claim and grant Defendants' summary judgment motion in full.

V.   <u>Remaining Motions and Requests</u>

Over a span of a three weeks, Plaintiff filed six motions or requests relating to his use of electronic devices and moved for leave to file a supplemental pleading. ECF 69–75. The Court will address each motion or request in turn.

A.     *ECF 69: Motion for Use of Electronic Devices*

In Plaintiff's motion for use of electronic devices, he explained that he needed "a laptop [] to allow [P]laintiff to electronically file documents to the parties related to his *litigations* to cure the continuous problems of denial of access to the courts." ECF 69, PgID 736 (emphasis added). Although it is unclear which cases Plaintiff sought to use the laptop for, the Court will deny the request as moot. The Court has granted Defendants' summary judgment motion. Thus, Plaintiff's need for a laptop in this case is slight. Besides, Plaintiff has successfully filed many documents in the case, including his recent flurry of motions and requests, ECF 69–75, without a laptop. For those reasons, the Court will deny the motion, ECF 69.

B.     *ECF 70: Request for Authorized Use of Electronic Devices*

In Plaintiff's next request for electronic devices, he listed certain laptops and electronic accessories that he could use "to ensure the just, speedy[,] and inexpensive manner of litigation." ECF 70, PgID 761–62 (citations omitted). The request[3] is essentially an extension of his previous motion, ECF 69. For the same reasons enumerated above, the Court will deny the request, ECF 70.

---

[3] Defendants pointed out that Plaintiff had recently filed a similar request in another case in the Eastern District of Michigan before Judge Shalina D. Kumar. ECF 76, PgID 801 (citing *Bell v. Washington*, 4:21-cv-10705, ECF 260 (E.D. Mich. Oct. 18, 2022)). It appears that Plaintiff has filed identical motions and requests in the two cases. *Compare* ECF 70; 72; 73; 74; 75, *with Bell*, 4:21-cv-10705, ECF 221; 224; 225; 226 (stricken); 257.

C.     *ECF 71: Request for a Video Hearing*

The Court will deny Plaintiff's request for a video hearing. Simply put, "the [C]ourt will not hold a hearing on . . . a motion in a civil case where a person is in custody unless the judge orders a hearing." E.D. Mich. L.R. 7.1(f)(1). The Court has not ordered a hearing, nor is it needed to resolve the summary judgment motion. Thus, the request for a hearing is denied.

D.     *ECF 72: Motion for Expedited Consideration*

Plaintiff moved for expedited consideration of his motions and requests "to allow Plaintiff, pro se litigant, to purchase, use and possess a laptop, thumb drives, hand-held scanner, and [an] external hard drive for litigation and educational purposes." ECF 72, PgID 780–81. The Court will deny the motion for expedited consideration as moot because his motion and request for the use of electronic devices have been resolved.

E.     *ECF 73 and 74: Motion to File Supplemental Pleading*

Plaintiff moved for leave to file a supplemental pleading "raising a continual constitutional violation." ECF 73, PgID 788. Plaintiff explained that his supplemental pleading would focus on MDOC employees who "are violating Plaintiff's Constitutional rights under the Equal Protection Clause" because other "inmates at several institutions [are allowed] to access and use electronic mailing for litigation, to send/receive legal documents to/from the court and adverse parties related to the litigation." *Id.* at 788–89. The Court will liberally construe Plaintiff's motion as one under Federal Rule of Civil Procedure 15(d) because the facts raised in the

17

supplemental pleading address "events occurring subsequent to the initial pleading." *Ne. Ohio Coal. for the Homeless v. Husted*, No. 2:06-CV-00896, 2015 WL 13034990, at *5 (S.D. Ohio Aug. 7, 2015); *see* ECF 74; *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (quotation omitted).

"Under Rule 15, leave should be freely given, in the absence of any apparent or declared reason—such as undue delay, bad faith or dilatory motive on the part of the movant, . . . undue prejudice to the opposing party by virtue of allowance of the amendment, and futility of amendment." *Husted*, 2015 WL 13034990, at *6 (internal quotation marks and brackets omitted) (quoting *Foman v. Davis*, 371 U.S. 178, 182 (1962)). And although "supplemental claims need not arise from the same transactions or occurrences as the original claims," the Court "may deny leave to file a supplemental pleading where that pleading relates only indirectly, if at all, to the original complaint and the alleged cause of action arose out of an entirely unrelated set of facts." *Id.* (cleaned up).

The Court will deny Plaintiff leave to file a supplemental pleading because the facts alleged in the pleading "relate[] only indirectly" to the complaint. *Compare* ECF 17 (amended complaint), *with* ECF 74 (supplemental pleading). Plaintiff's complaint relates to various prison conditions that allegedly violated his constitutional rights. *See* ECF 17, PgID 232–47. But the supplemental pleading centers on MDOC's alleged equal protection violation in its policy about prisoner access to laptops. ECF 74, PgID 793–96. The only relation between the facts in the supplemental pleading and the facts in the amended complaint is that Plaintiff would like to use a laptop for

litigation purposes, and the present case is proof that Plaintiff is litigating at least one case. ECF 74, PgID 795. The connection is only tangential, however, because Plaintiff did not limit the purpose for the laptop to this case alone.[4] *See id.* Instead, Plaintiff sought to use the electronic devices for general litigation and educational purposes. *See* ECF 74, PgID 794 (asking that the Court allow Plaintiff "to e-file legal documents with the courts and/or adverse parties").

At any rate, the Court has granted Defendants' summary judgment motion for lack of exhaustion. Plaintiff will therefore have no need for the laptop to keep litigating the present case, so the amendment would be futile. *Husted*, 2015 WL 13034990, at *6 (quotation omitted). The Court will deny Plaintiff's motion for leave to file a supplemental pleading, ECF 73, and will order the Clerk of the Court to strike Plaintiff's supplemental pleading, ECF 74.

### G.    *ECF 75: Request for United States Marshal Service*

Last, the Court will deny as moot Plaintiff's request for an order instructing the United States Marshals to serve Defendant Heidi Washington certain filings. For one, Defendant Washington is represented by counsel, who can electronically access the documents that Plaintiff has requested be served on her. *See* ECF 25; ECF 75, PgID 797. And the filings are not the kind that the Federal Rules of Civil Procedure require to be formally served. For another, the filings that Plaintiff would like served

---

[4] Plaintiff filed an identical motion for leave to file a supplemental pleading in his case before Judge Kumar. *Compare* ECF 73, *with Bell*, 4:21-cv-10705, ECF 225 (E.D. Mich. Oct. 5, 2022). The duplicate filing confirms that the motion is not tailored to the facts of the present case.

on Defendant Washington are motions and requests for electronic devices that the Court has denied as set forth above. *See* ECF 75, PgID 797–98. Either way, service would be unneeded. The Court will therefore deny the request for service by the United States Marshals.

## CONCLUSION

The Court will grant Defendants' summary judgment motion, ECF 39, in full. The Court will also deny Plaintiff's motions and requests related to the use of electronic devices, ECF 69; 70; 71; 72; 75, and the motion to file a supplemental pleading, ECF 73. Last, the Court will deny leave to proceed in forma pauperis because Plaintiff cannot take an appeal of the Court's order in good faith. *See* 28 U.S.C. § 1915(a)(3).

## ORDER

**WHEREFORE**, it is hereby **ORDERED** that Defendants' motion for summary judgment [39] is **GRANTED**.

**IT IS FURTHER ORDERED** that Plaintiff's motions and requests related to the use of electronic devices [69; 70; 71; 72; 75] are **DENIED**.

**IT IS FURTHER ORDERED** that Plaintiff's motion to file a supplemental pleading [73] is **DENIED**.

**IT IS FURTHER ORDERED** that the Clerk of the Court must **STRIKE** Plaintiff's supplemental pleading [74].

**IT IS FURTHER ORDERED** that leave to proceed in forma pauperis on appeal is **DENIED**.

This is a final order that closes the case.

**SO ORDERED.**

s/ Stephen J. Murphy, III
STEPHEN J. MURPHY, III
United States District Judge

Dated: October 31, 2022

I hereby certify that a copy of the foregoing document was served upon the parties and/or counsel of record on October 31, 2022, by electronic and/or ordinary mail.

s/ David P. Parker
Case Manager

21